Per Curiam.

We think the facts in this case do not show that a different voyage from that described in the policy was undertaken. The voyage, as described in the bill of lading, was from Boston to Charleston. The vessel left Boston for Charleston, but with intent to stop at Edgartown on the way there, and discharge freight. It was a voyage to Charleston, with intention to deviate. The cases in 2 T. R. 30, and 1 Douglas 17, are where the voyage set out upon was different from that insured. In the first, it began from a wrong place ; in the second, it was intended to terminate at a wrong place ; so the voyages were entirely different. Here the place of start mg, and the final object, were the same as in the voyage described, but there was an intention to go into a port on the way. This intention alone would not defeat the voyage contracted for.
The vessel however actually went into Edgartown and stayed there three days. This, unless there were sufficient cause for t, would discharge the underwriters and make the defendants table. But the defendants say that the vessel went there from necessity, and so the underwriters are not liberated. It was manifestly the intention of the master to put into Edgartown, though from the advertisement the plaintiffs might suppose that he was to sail direct for Charleston ; but the defendants said that he did not go to Edgartown in pursuance of his original intention, but that a supervening necessity led to the act, and that so they are excused. The jury were instructed, that if the vessel did not put in from necessity, there was a deviation, but that otherwise they would return a verdict for the defendants. The jury having found that there was a necessity, we are to decide whether that question was properly referred to them, there being a previous intention to stop at Edgartown. To determine this we must recur to the principles which regulate insurance. It is well known, that an intention to deviate, is not a deviation. There is always locus pee nit entice. This master might possibly have been informed just before he put in, that he would defeat the insurance, and have determined to proceed direct to Charleston, when this overpowering necessity supervened. Therefore, although this is a strong case and may tend to the raising of fictitious storms, yet we think it was *168 rightly left to the jury to decide what was the reason for put ting into Edgartown. They will of course require stronger evidence in a case of this sort than in ordinary cases. They are to look to the immediate cause of putting in, and not to the remote cause; and if they are satisfied that the violence of the winds and waves was the immediate cause, it will be a justification to the master.[1]

Judgment according to verdict

 See 2 Phillips on Ins. 168; Winlhrop v. Union Ins. Co. 2 Wash. Ciro C. R. 7.